UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHAWLA YOUSIF, ET AL.,

       Plaintiffs,

v.

OCWEN MORTGAGE CO., LLC; GMAC
MORTGAGE, LLC; HOMECOMINGS
FINANCIAL, LLC; FIFTH THIRD BANK;
CITIMORTGAGE, INC.; ONEWEST BANK,
FSB; SUNTRUST MORTGAGE, INC.; ET
AL.,

       Defendants.

_____/

Case No. 10-12632

Honorable Nancy G. Edmunds

**ORDER SATISFYING COURT'S SHOW CAUSE ORDER AND FINDING REMOVAL
JURISDICTION EXISTED AT THE TIME OF REMOVAL**

Defendant Ocwen Loan Servicing, LLC has removed this matter from Macomb County

Circuit Court asserting fraudulent joinder and alleging diversity jurisdiction under 28 U.S.C.

§ 1332. Defendants GMAC Mortgage, LLC; Homecomings Financial, LLC; Fifth Third

Bank; CitiMortgage, Inc.; OneWest Bank, FSB; and Suntrust Mortgage, Inc. (collectively

"Concurring Defendants") concur in the removal of this matter but assert that removal

jurisdiction exists because federal question jurisdiction exists under 28 U.S.C. § 1331.

Specifically, Concurring Defendants assert that jurisdiction is proper under the doctrines

of complete federal preemption, substantial federal question, and artful pleading. This

Court agrees Concurring Defendants and thus satisfies the Order to Show Cause and finds

that removal jurisdiction existed at the time of removal.  This matter is properly before this Court.

## I.    Background

### A.  General Nature of Plaintiffs' Claims

Over the past several months, Plaintiffs' counsel has filed numerous nearly identical foreclosure-related lawsuits in state court, each on behalf of a single borrower or joint borrower and each based on a single loan transaction involving a single property.  Those lawsuits have each been removed to federal court.[1]  Plaintiffs' counsel has changed tactics. In this action, more than 50 Plaintiff-borrowers have sued more than 20 named Defendant-lenders/servicers and an additional fifty unidentified Defendant-lenders ("Doe Defendants") based upon alleged irregularities in the mortgage lending and servicing processes.  (Am. Compl., Intro.)[2]  Plaintiffs allege that their mortgages are tainted by "defective information in the loan application process, defective charges, overinflated appraisals, failure to respond to requests for investigations based on mortgage application and billing errors and false promises made in the loan modification process." (*Id.*)  Plaintiffs also allege that there

---

[1]*See, e.g., Nabbud v. Mortgage Electronic Registration Sys., Inc., et al,* Case No. 10-10887-GCS (E.D. Mich., removed 3/5/10); *Mekani v. Homecomings Fin., LLC*, Case No. 10-10992-PDB (E.D. Mich., removed 3/11/10); *Yaldo v. Deutsche Bank Nat'l Tr. Co., et al.*, Case No. 10-11185-SJM (E.D. Mich., removed 3/24/10); *Yousif v. Wells Fargo Home Mortgage*, Case No. 10-11669-LPZ (E.D. Mich., removed 4/23/10); *Faris v. BAC Home Loans Serv., L.P., et al.*, Case No. 10-11764-GCS (E.D. Mich., removed 4/30/10); *Abro v. Chase Bank*, Case No. 10-11949-SJM (E.D. Mich., removed 5/13/10).

[2]Plaintiffs' counsel has filed an identical suit brought by more than 30 plaintiff-borrowers against more than 20 named defendant lenders/servicers and 50 unidentified defendant-lenders based upon alleged irregularities in the mortgage lending and servicing processes. *See Fadi Salama, et al. v. BAC Home Loans Serv. LP, et al.*, Case No. 10-12364, pending before Judge Tarnow.

were flaws in the manner in which Defendants sold, transferred, and/or acquired their mortgages.  (*Id.* at ¶¶ 7-11.)  Plaintiffs assert the following claims against all Defendants:

Count I     -     seeking an injunction against foreclosures
Count II    -     seeking a declaration that Defendants are not Holders
                  of the Mortgage Notes and Mortgage and thus have no
                  authority to foreclose on Plaintiffs' real property
Count III   -     seeking to Quiet Title
Count IV    -     alleging a Civil Conspiracy
Count V     -     alleging fraudulent or negligent misrepresentation
Count VI    -     alleging innocent misrepresentation
Count VII   -     alleging a "prima facie tort"
Count VIII- (mis-numbered as Count IX) alleging breach of contract

## B.  Specific Federal Nature of Several of Plaintiffs' Claims

Plaintiffs purport to allege only state-law claims against Defendants, but Plaintiffs' claims expressly rest upon alleged violations of federal law.  For example, Plaintiffs' fraud and misrepresentation claims arise in part out of Defendants' alleged failure to make disclosures required by federal law.  Paragraph 20, which is incorporated into each and every count of Plaintiffs' First Amended Complaint, alleges that:

> All the originators and their assigns intentionally inflated various figures on the original loan applications including but not limited to inflated income, understated expenses, understated liabilities, understated debt to ratio and other non-disclosed items as required by Federal law.

(Am. Compl. at ¶ 20.)

Plaintiffs also base their breach of contract claim in part upon Defendants' alleged violations of federal law.  Specifically, Plaintiffs assert that Defendants committed breaches of contracts when they violated "S.E.C. guidelines against 'underwater mortgages' constituting a large percentage of the total loan package . . . ."  (Am. Compl. at ¶ 79.) Similarly, Plaintiffs' request for an injunction barring Defendants from foreclosing on

Plaintiffs' property is based in part upon Plaintiffs' claim that Defendants violated "S.E.C. guidelines." (*Id.* at ¶ 25(5).)

Plaintiffs also allege throughout their Amended Complaint that they sent "various administrative complaints in the form [of] qualified written requests (QRW) [sic], to both Defendants and various federal agencies complaining of deceptive lending practices." (*Id.* at ¶¶ 18, 21, 35(h), 39, 42, 48, 61.) Those QWRs are created under and governed exclusively by a federal statute, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"). *See* 12 U.S.C. § 2605(e). Several of Plaintiffs' claims rest on the allegation that Defendants allegedly failed to respond to their QWRs as required by RESPA. (Am. Compl. at Counts III, IV, V, VI, ¶¶ 35(h), 42, 48, 61.)

Plaintiffs further allege, in Counts I through III of their Amended Complaint, that Defendants do not hold a legal interest in Plaintiffs' mortgages because, among other things, Defendants failed to comply with federal law concerning the transfer of negotiable instruments. Those counts incorporate and are based in part upon the allegation that:

> Instead [of] "selling" [Plaintiffs'] mortgage notes on the secondary market, Defendants failed to follow the basic legal requirements for the transfer of negotiable instruments and an interest in real property. While lenders could have simply gone to Congress to amend existing [federal] law so that it would allow for their envisioned transactions, they did not. Instead, the Defendants ignored the legal requirements.

(Am. Compl. at ¶ 8 (emphasis added).)

Furthermore, each and every Count in Plaintiffs' Amended Complaint arises in large part out of Plaintiffs' repeated allegations that the disclosures made to Plaintiffs during the loan origination process were insufficient. Paragraph 15 illustrates this repetitive theme:

> All of the above Plaintiffs attended their respective closings [and] at each closing, Plaintiffs were not informed of various charges that later were to be assessed

against them, they were never advised of the nature of their loan, they were never advised of their rescission rights, they were never advised of the split charges and excess interest rate differentials split between the broker and the original lender, they were not informed of various costs that were over inflated as shown on the HUD settlement statements including: origination fees, loan discount fees, appraisal fees, document preparation fees, broker processing fees, lender underwriting fees, and a yield to premium adjustment fees to name a few.

(Am. Compl. at ¶ 15.) Plaintiffs incorporate this allegation into every claim against Defendants and repeat it in several other paragraphs of their Amended Complaint, including Paragraphs 24(3), 37(3), 46, and 59.

### C. Removal Proceedings Thus Far

Plaintiffs originally filed this action in Macomb County Circuit Court. On July 1, 2010, Defendant Ocwen Loan Servicing, LLC ("Ocwen") removed the action to this Court alleging fraudulent joinder and invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. On July 14, 2010, this Court issued an Order to Show Cause concerning removal jurisdiction and Defendant Ocwen's claims of fraudulent joinder and set August 18, 2010 as the hearing date on the issue of removal jurisdiction. The Order also notified Defendant Ocwen of a possible procedural defect in failing to obtain the consent of the remaining Defendants in the removal, informed Plaintiffs that the Court may remand for a procedural default only if requested by the Plaintiffs, *Page v. City of Southfield*, 45 F.3d 128, 133-34 (6th Cir. 1995), and informed Plaintiffs that if they wanted to file a motion for remand based upon a procedural defect then they must do so no later than 30 days after the July 1, 2010 removal notice. Plaintiffs did not file a motion for remand within that time frame and have not filed one to date.

On July 21, 2010, Defendant Ocwen timely responded to the Order to Show Cause reasserting its claim of fraudulent joinder and arguing that removal is proper based on diversity jurisdiction. Defendants GMAC Mortgage, LLC; Homecomings Financial, LLC; Fifth Third Bank; CitiMortgage, Inc.; OneWest Bank, FSB; and Suntrust Mortgage, Inc. filed a concurrence in the removal asserting that removal jurisdiction based on federal question rather than diversity jurisdiction existed at the time of the removal and thus removal was proper.

To facilitate the Court's decision on the issue of jurisdiction, it issued another Order requiring Defendants to provide the Court with the citizenship of each Defendant in this removed action. (7/22/10 Order.) Defendant Ocwen's response reveals that several Defendants, e.g., First State Bank Mortgage Company, GMAC Mortgage, LLC, and Homecomings Financial, LLC, are Michigan citizens. Accordingly, complete diversity does not exist between the Plaintiffs and Defendants in this action. The Court must therefore address Defendants' arguments that removal jurisdiction exists on other grounds, i.e., under the doctrines of fraudulent joinder, complete preemption, substantial federal question, or artful pleading.

## II.    Analysis

Under 28 U.S.C. § 1441(a), a defendant may remove a state court action to federal court as long as the action is one "of which the district courts of the United States have original jurisdiction . . . ." Here, the Court has original jurisdiction, and thus removal jurisdiction, over Plaintiffs' claims. Although Plaintiffs attach state-law labels to their claims, jurisdiction is proper in this Court under the doctrines of complete federal preemption, substantial federal question, and artful pleading.

**A. Federal Question Jurisdiction Exists Because the Federal Home Owners' Loan Act and Its Implementing Regulations Completely Preempt Claims Against Defendant OneWest Bank, FSB**

When Congress enacts a statute that completely preempts state law, "any claim purportedly based upon that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Catepillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Removal based upon federal question jurisdiction is proper "when a federal statute wholly displaces [a] state law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Here, this Court has federal question jurisdiction supporting removal because the federal Home Owners' Loan Act, 12 U.S.C. § 1461, *et seq.*, ("HOLA"), and its implementing regulations, 12 C.F.R. § 560.2, *et seq.*, completely preempt some if not all of Plaintiffs' claims against Defendant OneWest Bank, FSB. Furthermore, removal of the entire action is proper so long as a single claim in a complaint is completely preempted. *See In the Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706, 710 (7th Cir. 1992) (observing that "a single federal claim suffices to support removal" of an entire action under the doctrine of complete preemption and citing 28 U.S.C. § 1441(c)).

As Defendants point out, Congress authorized the Office of Thrift Supervision ("OTS") to promulgate rules governing federal savings associations like OneWest Bank. *See State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). "HOLA created what is now known as the OTS for the purpose of administering the statute, and it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations." *Id.* Pursuant to this broad mandate, the OTS has promulgated extensive regulations, including two codified at 12 C.F.R. §§ 545.2 and 560.2 that preempt

7

state laws that would regulate the operations of a federal savings association.  Included among those preempted actions are state law claims affecting "terms of credit," "disclosure," "processing," "origination," "servicing," "sale or purchase of, or investment or participation in, mortgages."   *See* 12 C.F.R. § 560.2(b); *see also Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (observing that, because the plaintiff's claimed violation of § 17200 of California's unfair competition law, "as applied, is a type of state law listed in paragraph [560.2](b) – in two separate sections – the preemption analysis ends there.").

As discussed above, Plaintiffs' claims rest in large part upon allegations that disclosures made to them during the loan origination process were insufficient, and Section 560.2(b) expressly preempts all state claims related to "disclosure," "terms of credit," and "origination."  12 C.F.R. § 560.2(b).  Likewise, several of Plaintiffs' claims rest upon alleged flaws in Defendants' sale, transfer, acquisition, and/or investment in Plaintiffs' mortgages (*see* Am. Compl., Counts I, II, and III), and § 560.2(b)(10) specifically preempts all claims related to the "sale or purchase of, or investment or participation in mortgages."

Federal courts have repeatedly held that § 560.2(b) preempts state common law claims similar to those asserted by Plaintiffs.  For example, in *Conder v. Home Savings of America*, 680 F. Supp.2d 1168 (C.D. Cal. 2010), the plaintiff-borrower asserted common law fraud claims, among others, against the mortgage lender and loan servicer based upon the lenders' allegedly fraudulent failure to disclose information concerning the terms of the loan.  *Id.* at 1175-76.  The *Conder* court held that the "alleged failures to disclose fit squarely within Sections 560.2(b)(4) and (9)."  *Id.*   A similar result was reached in *Ayala v. World Savings Bank, FSA,* 616 F. Supp.2d 1007 (C.D. Cal. 2009).  In *Ayala*, the

plaintiffs-borrowers brought common law fraud and other claims against the defendant-lender arising out of the defendant's alleged misrepresentations about the terms of and the plaintiffs' ability to repay a mortgage loan. The *Ayala* court held that § 560.2(b) preempted the fraud claim because it related to the terms of credit extended to the plaintiffs and to disclosures allegedly made to them. *Id.* at 1016-18. *See also Salgado v. Downey Sav. & Loan Ass'n, F.A.,* No. CV 09-1771 AHM (MANX), 2009 WL 960777, *3 (C.D. Cal. April 6, 2009) (observing that, although the plaintiff's "claims are purportedly grounded in state contract and fraud doctrines," "they are clearly directed at enforcing" the defendant lenders' "alleged responsibility to disclose information about a home loan" and "therefore fall squarely within the confines of 12 C.F.R. § 560.2(b).").

In light of the above, Defendant OneWest Bank has shown that, at the time of removal and now, federal question jurisdiction exists under the complete preemption doctrine. This, however, is not the sole basis for the Court's federal question jurisdiction.

## B. Federal Question Jurisdiction Also Exists Under the "Substantial Federal Question" Doctrine

Federal question jurisdiction also exists because the claims asserted in Plaintiffs' Amended Complaint implicate significant questions of federal law. In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, Inc.*, 545 U.S. 308, 314 (2005), the Supreme Court explained that a federal court has federal question jurisdiction over a state law claim if the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal court may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." All of these circumstances are present here.

First, Plaintiffs' claims raise several federal issues. As discussed above, Plaintiffs'

allege throughout their Amended Complaint that Defendants failed to make disclosures

"required by federal law," that Defendants failed to comply with federal law concerning the

transfer of mortgages, that Defendants failed to respond to QWRs as required by a federal

statute, RESPA, and that Defendants failed to comply with S.E.C. regulations. Specifically,

Plaintiffs rest at least one of their claims on an alleged failure to respond – adequately or

otherwise – to their "Qualified Written Request" ("QWR") letters. Allegedly, on behalf of

each Plaintiff, Joseph Bisogno of the Loan Compliance Advisory Group, mailed letters to

Plaintiffs' respective lenders making demands for information concerning the origination of

their separate loans. Each letter was purportedly sent pursuant to § 2605 of the Real

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* Under RESPA,

a borrower has the right to send a QWR to his loan servicer seeking "information relating

to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1)(A). Both the borrower's right to serve

a QWR and the servicer's obligation to respond arise from, and exist only as a result of,

federal law. Thus, to the extent Plaintiffs seek any recovery based upon an alleged failure

to adequately respond to a QWR, those claims necessarily arise under federal law.

In addition to Plaintiffs' claims that Defendants violated RESPA, Plaintiffs repeatedly

allege that some or all of Defendants violated several other provisions of federal law. For

example, Plaintiffs assert that Defendants (1) failed to advise of rescission rights – a

violation of the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") (*see* Am.

Compl. at ¶¶ 37.3, 46, and 59); (2) misrepresented settlement costs – a violation of RESPA

(*id.* at ¶¶ 46 an 59); and (3) used the mail to extort excessive fees – an ostensible violation

of the federal mail fraud statute, 18 U.S.C. § 1341, *et seq.* (*id.* at ¶ 37.7).

Second, these federal issues are both disputed and substantial. Defendants deny Plaintiffs' factual allegations and legal claims. That the disputed federal issues are substantive is evident; resolution of these federal issues will facilitate resolution of Plaintiffs' claims. This in turn will provide guidance to other state and federal courts called upon to decide these same federal issues. Even a cursory review of this Court's docket reveals a rash of state and federal cases alleging similar claims and raising the same disputed federal issues. Federal court review of claims raising substantive federal issues should facilitate uniformity in the interpretation and application of federal law.

Finally, this Court's adjudication of this action will not upset any congressionally approved division of judicial responsibilities. Congress has expressed its intent that federal courts are to adjudicate claims like those asserted by Plaintiffs here. For example, Congress has enacted statutes like TILA and RESPA that create a private right of action for plaintiffs aggrieved by the same type of misconduct alleged in Plaintiffs' Amended Complaint (i.e., insufficient pre-loan disclosures, etc.). *See, e.g.,* 12 U.S.C. § 2614. This Court's assertion of jurisdiction over this action will not bring into federal court a class of cases that Congress intended to be heard elsewhere and will not upset any careful balancing of state and federal judicial responsibilities. As to Plaintiffs' state law claims, Congress has granted the federal courts supplemental jurisdiction under 28 U.S.C. § 1367(a) over the non-federal claims to the extent they form part of the same case or controversy, subject to the exceptions set forth in § 1367(c). This Court's exercise of jurisdiction over this action will not offend the principles of comity.

### C. Federal Question Jurisdiction Also Exists under the "Artful Pleading" Doctrine

The "artful pleading" doctrine also supports this Court's exercise of jurisdiction over this matter. Under the "artful pleading" doctrine, a federal court has federal question jurisdiction over an action where (1) a plaintiff has creatively drafted his complaint so as to avoid naming a federal statute as the basis for his claim; and (2) the claim is, in reality, based upon a federal statute. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). As discussed above, several of Plaintiffs' state law claims are based on violations of TILA, RESPA, and the federal mail fraud statute. TILA and RESPA impose disclosure requirements on lenders during the mortgage closing process. Specifically, the purpose of TILA is "to assure a meaningful disclosure of credit terms," 16 U.S.C. § 1601(a), and "[t]he purpose of RESPA is to address 'certain abusive practices that have developed' in relation to the disclosure of information regarding the 'nature and costs of the [real estate] settlement process." *Flagg v. Yonkers Savings and Loan Ass'n*, 396 F.3d 178, 184 (2d Cir. 2005) (quoting 12 U.S.C. § 2601). Those are precisely the practices and disclosure requirements that Plaintiffs allege Defendants violated here. (Am. Compl. at ¶¶ 15, 18, 21, 35(h), 39, 42, 48, 61.) Plaintiffs' claims are similar to the state law claims in *Salgado*, 2009 WL 960777, that were found to support federal question jurisdiction under the artful pleading doctrine.

## III. Conclusion

For the above-stated reasons, this Court satisfies its July 14, 2010 Order to Show Cause. Federal question jurisdiction under 28 U.S.C. § 1331 existed at the time of removal, and this matter is properly before the Court.[3]

---

[3]Because this Court finds that federal question jurisdiction under 28 U.S.C. § 1331 existed at the time of removal, there is no need to address Defendant Ocwen's argument

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: August 16, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 16, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager

---

that removal was proper under 28 U.S.C. § 1332. The Court does note, however, that Defendant Ocwen appears to apply the incorrect test for fraudulent joinder. *See Probus v. Charter Communications, LLC*, 234 F. App'x 404, 406-07 (6th Cir. 2007) (observing that "[i]n order to determine whether a non-diverse defendant was fraudulently joined, we ask whether the plaintiff had a colorable basis for her claims against that defendant.").