UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAWSAN JARBO, ET AL.,

        Plaintiffs,

v.

BAC HOME LOAN SERVICING, ET AL,

        Defendants.

_____/

Case No. 10-12632

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, FOR
SUMMARY JUDGMENT, OR FOR JUDGMENT ON THE PLEADINGS [54, 57, 64, 65,
66, 67, 77, 78, 79, 80, 81]**

This matter comes before the Court on the following dispositive motions:

1.  Defendant Fifth Third Bank's motion to dismiss [54];

2.  Defendant Cenlar, FSB's motion to dismiss or for summary judgment [57];[1]

3.  Defendant CitiMortgage, Inc.'s motion to dismiss [64];

4.  Defendant Homecomings Financial - GMAC's motion to dismiss [65];

5.  Defendant SunTrust Mortgage, Inc.'s motion to dismiss [66];

6.  Defendant OneWest Bank, FSB's motion to dismiss [67];

7.  Defendant Chase Home Finance LLC's motion to dismiss [77];

8.  Defendant BAC Home Loan Servicing's motion to dismiss [78];

9.  Defendant America's Servicing Company and Wells Fargo Bank's motion to
dismiss or for summary judgment [79];

_____

[1]Plaintiffs' amended complaint incorrectly names this Defendant as Central Loan
Administration & Registry.

10. Defendant PNC Bank's motion for judgment on the pleadings [80]; and

11. Defendant Ocwen Loan Servicing, LLC's motion to dismiss [81].

For the reasons stated more fully below, Defendants' motions are GRANTED, and Plaintiffs' Complaint is DISMISSED WITH PREJUDICE.[2]

## I.   Facts

The claims in Plaintiffs' amended complaint arise out of Defendants' allegedly improper conduct in connection with the origination, servicing, and/or assignment of mortgage loans executed by each individual Plaintiff that allegedly caused or will cause an improper foreclosure on Plaintiffs' mortgaged residential property.  Plaintiffs' complaint does not allege claims about flawed and/or fraudulent documents prepared in connection with the foreclosure process, e.g., robo-signers.  In fact, the vast majority of named Plaintiffs have no foreclosure proceedings pending against them.  Accordingly, this Court focuses on the claims asserted in Plaintiffs' complaint and not the foreclosure process claims that

---

[2]Plaintiffs' amended complaint is dismissed because all Defendants who have been served and have not been voluntarily dismissed from this action have filed dispositive motions that are granted in this Opinion and Order.  Defendants Litton Loan Servicing, Inc., Washington Mutual Bank, and First State Bank Mortgage Co. have previously been dismissed [Doc. Entries 23, 68, 75].  At a status conference held on September 16, 2010, Plaintiffs were required to file a return of service on remaining Defendants by September 23, 2010.  Plaintiffs filed no returns of service by that date.

At the December 8, 2010 hearing, Plaintiffs made an oral request to further amend their complaint.  Plaintiffs' oral motion is denied.  Plaintiffs failed to suggest what additional specificity or facts they might provide if leave to amend were granted.  Plaintiffs have not provided the Court with a proposed amended complaint.  Moreover, similar to Plaintiffs' counsel's response in a similar action before Judge Cohn, *see Seman v. National City Home Equity, et al.*, Case No. 10-11009, Plaintiffs' responses to Defendants' dispositive motions merely proffer more conclusory allegations concerning a Senate Subcommittee's investigation of the entire mortgage lending industry and fail to explain how this relates to the loan transactions and claims at issue in this litigation.  Accordingly, the Court finds that any such amendment would be futile for all the reasons provided in this Opinion.

are currently the subject of investigations by the Attorney Generals of all fifty states and the federal government and the topic of numerous recent news articles.

On April 26, 2010, the 50 individual named Plaintiffs filed this action in state court against some 20 Defendant Lenders/Servicers alleging multiple claims. On May 12, 2010, Plaintiffs filed a First Amended Complaint adding 50 unidentified Defendant Lenders/Servicers ("Doe Defendants"). This matter was removed to federal court on May 12, 2010; and, in an August 16, 2010 order, this Court concluded that, although complete diversity does not exist, it has subject matter jurisdiction over the claims asserted in Plaintiffs amended complaint.

In their amended complaint, Plaintiffs state that their claims all arise from Defendants' conduct in connection with the mortgage loan origination and/or servicing process employed in their individual mortgage loans. (Am. Compl., Intro.) Plaintiffs, however, do not separate out their claims. Rather, Plaintiffs generally allege that Defendants intentionally inflated figures on original loan applications; failed to make adequate disclosures on closing costs, charges, interest rates, rescission rights, and numerous fees in violation of state and federal law, i.e., the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; placed Plaintiffs in unaffordable mortgages and set Plaintiffs up to eventually lose their homes and thus breached a fiduciary duty owed to Plaintiffs; breached the implied covenant of good faith and fair dealing in their mortgage contracts by failing to negotiate loan modifications in good faith; misrepresented settlement costs and failed to respond to qualified written requests (QWRs) – violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*; assessed excessive interest rates and illegal escrow fees, penalties and charges; and have threatened foreclosure despite

the lack of standing as holders-in-due course or as real parties in interest, despite the lack of proper notice, and despite the fact that QWRs remain unanswered. (Am. Compl. ¶¶ 14-18, 20-21, 23-24, 26-31, 32-35, 43-80.)

In their amended complaint, Plaintiffs each allege that they applied for mortgage loans, accepted thousands of dollars from a Defendant Lender, used that money to buy their homes or refinance debt, and gave mortgages on their real property as security. (Am. Compl. ¶¶ 12-17.)

Plaintiffs assert the following claims against all Defendants:[3]

| | | |
|---|---|---|
| Count I | - | seeking an Injunction against foreclosures on Plaintiffs' residential property by advertisement; |
| Count II | - | seeking a Declaration that Defendants are not holders-in-due-course of mortgage loans and thus lack standing to foreclose on mortgaged property; |
| Count III | - | seeking to Quiet Title by having this Court declare that Plaintiffs' mortgage loans are illegal and thus null and void and Plaintiffs' property is lien free; |
| Count IV | - | alleging a Civil Conspiracy among Defendant Original Lenders and Loan Servicers, their assignees, and non-party investment bankers to fraudulently misrepresent the terms of Plaintiffs' mortgage loans so as to induce Plaintiffs to execute unaffordable mortgages with the intent, upon Plaintiffs' inevitable default, to unlawfully foreclose on their mortgaged property; |
| Counts V and VI | - | alleging Defendants intentionally made Fraudulent, Negligent, or Innocent Misrepresentations to Plaintiffs by including inflated figures like Plaintiffs' income and expenses on Plaintiffs' original loan applications, by failing to disclose items on their HUD |

[3]Despite language to the contrary in Plaintiffs' Response to SunTrust's motion to dismiss, Plaintiffs do not allege a claim for promissory estoppel in their amended complaint.

|          | settlement statements as required by TILA, by intentionally or negligently disregarding Plaintiffs' ability to repay their mortgage loans, and by negotiating with Plaintiffs on their QWRs while threatening foreclosure in violation of RESPA; |
|----------|------|
| Count VII - | alleging a "Prima Facie Tort" and claiming that Defendants breached the standard of care for mortgage bankers and loan servicers by inducing Plaintiffs to enter into unaffordable mortgages and by sending out mortgage loan billing statements that incorporated the above alleged misrepresentations and thus caused Plaintiffs to suffer damages by threatening foreclosure on their mortgaged property and harming their credit and; |
| Count VIII- | (mis-numbered as Count IX) alleging Breach of Contract, i.e., that Defendants breached their original loan contracts with Plaintiffs by making unauthorized assignments and by assessing unauthorized charges, costs, fees and penalties. |

(Am. Compl.)

This matter is now before the Court on dispositive motions brought by each of the Defendants. A breakdown of Plaintiffs associated with each defense motion is as follows.

**1. Defendant Homecomings and GMAC Mortgage [65]**

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer[4] |
|---------------------|--------------------|---------------------------|--------------|----------------------|
| Nawal Sharrak* | New Century Mortgage | $ 38,800.00 (Purchase) | 08/06/04 | GMAC |
| Sarmad Mikho* | Homecomings | $193,600.00 | 03/02/07 | GMAC |

---

[4]RESPA defines the term "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C.A. § 2605(i)(2). The term "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 U.S.C.A. § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C.A. § 2605(i)(3).

| Plaintiff/Borrower | Originating Lender | Loan Amount/Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
|  |  | (Refinance) |  |  |
|  | Homecomings | $ 48,400.00 (Home Equity L/C) | 03/02/07 |  |
| Almas Issa** | GreenPointe Mtge Funding | $180,000.00 (Refinance) | 05/24/06 | GMAC |

**\*No pending foreclosure proceedings [113].**
**\*\*Property sold at foreclosure sale in July 2010 [113].**

## 2. Defendant Chase Home Finance LLC and JPMorgan Chase Bank [77]

| Plaintiff/Borrower | Originating Lender | Loan Amount/Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Nadia Kinaya* | Chase Manhattan Mortgage[5] | $274,550.00 (Purchase) | 09/09/04 |  |
| Manual Kattula* | JPMorgan Chase | $ 56,458.25 (Refinance) | 11/10/05 |  |
|  | JPMorgan Chase | $ 60,000.00 (Home Equity L/C) | 12/01/05 |  |
| Yassir Yousif* | JPMorgan Chase | $152,000.00 (Refin.1st Mortgage) | 04/25/07 |  |
|  | JPMorgan Chase | $ 25,000.00 (2nd Mortgage) | 04/25/07 |  |
| Souhaila Yousif** | Chase Manhattan | $191,250.00 (Refinance) | 10/26/04 |  |
| Souad Salmo* Mahir Salmo Thaira Salmo | Allied Mortgage Capital Corp. | $127,000.00 (Refinance/Mtge) | 12/17/03 |  |
| Souad Salmo* (only signatory) | Allied Mtge. | $127,000.00 (Mtge. Note) | 12/17/03 |  |
| Najeeb Hermez*** | Chase Manhattan | $156,000.00 (Refinance) | 10/26/04 |  |
| Fidal Auri**** | JPMorgan Chase | $325,800.00 (Purchase) | 01/07/05 |  |
|  | Chase Home Fin. | assigned mtge. | 03/24/10 |  |

**\*No foreclosure proceedings pending [110].**
**\*\*Foreclosure proceedings started; Sheriff's Sale adj. 12/17/10 [110].**
**\*\*\*Foreclosure proceedings started; Sheriff's Sale held 4/23/10;**
**Redemption period expired 10/20/10 [110].**

---

[5]Defendant Chase Home Finance LLC is the successor by merger to Chase Manhattan Mortgage Corporation. (Chase Mot. at 3, n.5.)

**\*\*\*\*Foreclosure proceedings started (no date provided) [110].**

### 3. Defendant OneWest Bank, FSB [67]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Munther Baho* | IndyMac Bank[6] | $146,400.00 (Purchase/Sr. Loan) | 02/14/06 | |
| | IndyMac Bank | $ 36,600.00 (Jr. Loan) | 02/14/06 | |

**\*No pending foreclosure proceedings [113].**

### 4. Defendant Cenlar, FSB [57]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Sawsan Jarbo* | Taylor, Bean & Whitaker Mtge Co. | $280,000.00 (Refinance) | 04/18/07 | Cenlar (since 2009) |

**\*No pending foreclosure proceedings [105]**.

### 5. Defendant SunTrust Mortgage, Inc. [66]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Raid Esliwa* | John Adams Mtge Co. | $121,000.00 | 05/18/07 | SunTrust |

---

[6]On July 11, 2008, IndyMac was closed by the Office of Thrift Supervision ("OTS") and the Federal Deposit Insurance Corporation ("FDIC") was named Conservator. On March 19, 2009, the FDIC completed the sale of certain assets of IndyMac Federal to OneWest, a newly formed federal savings bank.

The failure of IndyMac, OneWest's acquisition of certain IndyMac assets, and the related purchase agreements, are matters of public record of which this Court can take judicial notice. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *abrogated on other grounds*, *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010).

**\*No pending foreclosure proceedings [113].**

### 6. Defendant Ocwen Loan Servicing, LLC [81][7]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Khawla Yousif* | New Century Mtge Corp. | $125,600.00 | 08/15/05 | Ocwen Loan Servicing (since 11/05) |

**\*No pending foreclosure proceedings [109]**

### 7. Defendant PNC Bank f/k/a National City Bank [80]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Mahir & Thaira* Salmo (Husb/Wife) | National City Bank | $250,000.00 | 06/20/03 | |
| Khawla Yousif* & Subhi Mansoor (Husband/Wife) | National City Bank | $ 35,300.00 (Home equity L/C) | 05/14/07 | |
| Fidal Auri* (unmarried) | National City Bank | $ 50,000.00 (Home equity L/C) | 09/05/07 | |

**\*No pending foreclosure proceedings [116].**

### 8. Defendant Fifth Third Bank [54]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Jamil & Suhaila** Jarbo (Husb/Wife) | Wellington Mtge. Company | $139,000.00 (Refinance) | 06/27/95 | |
| | Assigned to Fifth Third Predecessor | | 07/03/95 | |
| Ghassan Daood* | Source One Mtge Co. | $142,000.00 (1st Mtge) | 04/01/04 | |
| | Assigned to Fifth Third | | 04/06/04 | |
| | Assigned to Freddie | | | |

---

[7]Defendant Ocwen Loan Servicing, LLC is incorrectly named as Ocwen Mortgage Company, LLC in Plaintiffs' amended complaint.

| Plaintiff/Borrower | Originating Lender | Loan Amount/Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| | Mac | | | Fifth Third |
| Laura Corso* | Fifth Third Bank | $ 75,000.00 (Equity L/C) | 11/09/05 | |
| Al Mekha* | Fifth Third Bank | $ 90,000.00 (Equity L/Cr/3d mtge) | 01/27/06 | |
| Salwan Jezrawi and Asiza Issaq* (Husband/Wife) | Fifth Third Bank | $ 38,619.50 (Installment Mtge Loan/2d mtge) | 06/30/04 | |
| George Jajo* | Fifth Third Bank | $113,000.00 (Equity L/Cr/mtge) | 10/17/06 | |
| Nadir Zetona* | Fifth Third Bank | | | |

**\*No pending foreclosure proceedings [107].**
**\*\*Loan Pd off in 2005 (Def. Fifth Third Mot.].**

### 9. Defendant CitiMortgage, Inc. [64]

| Plaintiff/Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Ted B. Abro* | ABN AMRO Mtge. | $169,350.00 (Purchase) | 01/29/03 | CitiMortgage |
| Munther Baho* | IndyMac,FSB | $ 36,600.00 (Purchase) | 02/14/06 | CitiMortgage[8] |
| Joseph DiPiazza*** | Mortgage 1, Inc. | $305,000.00 (Refinance) | 04/16/04 | CitiMortgage |
| | Citibank,N.A. | $ 68,000.00 (Home Equity) | 02/02/07 | CitiMortgage |
| George S. Jajo & Nadir Zetona* | Union Fed. Bank of Indianapolis | $158,000.00 (Refinance) | 04/23/03 | CitiMortgage |
| Sawsan Jarbo* | Taylor, Bean & Whitaker Mtge | $ 32,000.00 (Refinance) | 04/18/07 | CitiMortgage |
| Norman Owraha** | Shores Mtge | $173,600.00 (Refinance) | 02/18/05 | CitiMortgage |
| Lilna Yousif and Lara Yousif* | MICA Mtge Co. | $145,000.00 (Purchase) | 06/01/07 | CitiMortgage |
| Nabeel Zora* | CitiBank | $109,900.00 (Home Equity) | 12/22/05 | CitiMortgage |

**\*No pending foreclosure proceedings [113].**

---

[8]Defendant CitiMortgage, Inc. is an operating subsidiary of Citibank, N.A., a national bank regulated by the Office of the Comptroller of Currency. (Citibank Mot. at 5 n.4.)

**Foreclosure on Hold [113].**
***Foreclosure on Hold due to DiPiazza's Chapter 13 Bankruptcy [113].**

## 10. Defendant BAC Home Loan Servicing, LP[9] [78]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Ray Shamon** | Countrywide Home Loans, Inc. | $170,300.00 | 06/28/07 | BAC Home |
|  | Countrywide Bank, FSB | 42,600.00 | 06/28/07 | BAC Home |
| Kazwan Zora* | GreenPoint Mtge Funding, Inc. | 280,000.00 | 01/25/05 | BAC Home |
| Eddie Araboo* | Quicken Loans | 171,700.00 | 08/16/07 | BAC Home |
| Al Mekha* | First Magnus Fin. | 260,000.00 | 11/23/04 | BAC Home |
| Haitham Tobia* | Countrywide Bank, N.A. | 388,000.00 | 06/01/05 | BAC Home |
|  | CHL d/b/a America's Whls. Lender | 48,500.00 | 06/01/05 | BAC Home |
| Walid Yaldo* | Countrywide Bank, FSA | 124,000.00 | 10/09/07 | BAC Home |
| Heather Aghos* | CHL d/b/a Amer. Whls. Lender | 126,400.00 | 12/06/06 | BAC Home |
|  | Countrywide Bank, N.A. | 31,600.00 | 12/06/06 | BAC Home |
| Intisar Zara* | Countrywide Bank, FSB | 300,000.00 | 08/29/07 | BAC Home |
| Mazen Kajy*** | CHL d/b/a Amer. Whls. Lender | 148,000.00 | 11/08/05 | BAC Home |
|  | Citibank, N.A. | 48,700.00 | 03/23/07 | BAC Home |
| Elham Mona*** | CHL d/b/a Amer. Whls. Lender | 104,000.00 | 08/05/05 | BAC Home |
| Alham Kaddis* | Countrywide Bank, FSB | 139,000.00 | 08/05/07 | BAC Home |
| Salwan Dawood**** & Lava Francis | Pathway Fin., LLC | 162,500.00 | 12/06/06 | BAC Home |
| Amir Nafso*** | Countrywide Home Loans d/b/a Amer. | 285,000.00 | 02/20/07 | BAC Home |

---

[9]Plaintiffs' amended complaint incorrectly identifies Defendant BAC Home Loans Servicing, LP as "f/k/a Bank of America, for Countrywide Home Loans." BAC is formerly known as Countrywide Home Loans Servicing, LP. (Def. BAC Mot. at 1 n.1.)

| Plaintiff/ Borrower | Whls. Lender | | | |
|---|---|---|---|---|
| Alma Issa* | GreenPoint Mtge Fundings, Inc. | 22,500.00 | 05/24/06 | BAC Home |
| Nabil Savaya | Plaintiffs allege that BAC services a second mortgage (Am. Compl. ¶ 19N), but BAC does not service any loan made to this Plaintiff and has no record of any loan made to this Plaintiff or any loan secured by any property owned by this Plaintiff (BAC Mot. at 2 n.4). | | | |

 **\*No pending Foreclosure proceedings [111].**
  **\*\*Mortgage foreclosed on 10/01/10; redemption period expires 4/01/11 [111].**
   **\*\*\*Foreclosure proceedings cancelled on 4/23/10 for Mazen Kajy; on 4/01/10 for Elham Mona; on 8/17/10 for Amir Nafso [111].**
**\*\*\*\*Foreclosure proceedings initiated 5/06/10; foreclosure sale adjourned and now scheduled for 12/10/10.**

### 11.    Defendants Wells Fargo Bank and America's Servicing Co.[10] [79]

| Plaintiff/ Borrower | Originating Lender | Loan Amount/ Type of Loan | Closing Date | Mortgage Servicer |
|---|---|---|---|---|
| Maram Aghos** | World Sav. Bank (now Wells Fargo) | $256,000.00 | 05/11/05 | |
| James Sagami* | " | 251,200.00 | 09/15/04 | |
| Salwan Jezrawi** & Aziza Issaq | " | 152,000.00 | 06/30/04 | |
| Nabil Savaya* | " | 139,500.00 | 01/10/05 | |
| Nabil Yousif*** | " | 208,000.00 | 10/18/04 | |
| Senaa Shamo**** | " | 166,400.00 | 04/05/05 | |
| Janette Isaac***** | Equifirst Corp. | 189,000.00 | 05/25/06 | |

 **\*No pending foreclosure proceedings [108].**
  **\*\*Loan is in active foreclosure and loss mitigation; no pending sheriff's sale date [108].**

_____

    [10]America's Servicing Company is a division of Wells Fargo Bank, N.A. and both Defendants are referenced herein as "Wells Fargo."  Plaintiffs' amended complaint identifies Wells Fargo as "Wells Fargo Bank, N.A. f/k/a Wachovia Mortgage f/k/a World Savings Bank FSB."  World Savings Bank was part of Wachovia at the time of the loan closings on the World Savings Bank mortgages.  It later merged into Wells Fargo.  (Wells Fargo Mot. at 1 n.1.)

**\*\*\*Mortgage foreclosed and Sheriff's Sale conducted on 5/14/10; On 11/10/10, property was redeemed [108].**
 **\*\*\*\*Mortgage foreclosed and Sheriff's Sale conducted on 1/22/10 (property sold to Wells Fargo); On 7/22/10, Shamo's redemption right expired and property is being marketed for sale [108].**
**\*\*\*\*\*Mortgage foreclosed and Sheriff's Sale conducted on 9/24/10; the redemption period is running.**

## II.  Standard of Review

### A.  Rule 12(b)(6) Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

### B. Rule 12(c) Standard

At any time after the pleadings close, but before trial commences, a party may move for a judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The standard of review is the same standard applicable to a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

### C. Rule 56(c) Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-

that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). When the moving party has met its burden under rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III. Analysis

Defendants have asserted similar grounds for dismissal. The Court will address each below, beginning with the grounds for dismissal of the federal claims asserted in Plaintiffs' amended complaint.

### A. Federal Claims

### 1. TILA: Time-barred/Failure to State a Claim

Plaintiffs' allegations concerning the receipt of disclosure documents fall within the scope of TILA, 15 U.S.C. § 1601, *et seq.* Any damage claim that allegedly resulted from a TILA violation is time-barred by TILA's one-year statute of limitations for damage claims. *See* 15 U.S.C. § 1640(e). Moreover, for each Plaintiff's loan that originated more than three years before April 26, 2010 -- the date this suit was filed in state court -- any claim seeking rescission as a remedy for a TILA violation is barred under TILA's three-year statute of repose. *See* 15 U.S.C. § 1635(f); *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 953-55 (E.D. Mich. 2009). All other rescission claims that allegedly resulted

14

from a TILA violation are also subject to dismissal with prejudice because Plaintiffs have not and cannot plead facts that support rescission. *See Printy v. GMAC Mortgage*, No. 09-14625, 2010 WL 931861, *5 (E.D. Mich. Mar. 11, 2010). First, the documents Plaintiffs signed at their closings directly contradict allegations in their amended complaint that they were not informed of various charges, fees, and costs, and were not advised of their rescission rights. *Id.* (*See, e.g.*, Def. Fifth Third Bank's Mot., Exs. Q (TILA Disclosures) and S (Notice of Right to Cancel).) Second, as to Plaintiff loans that constitute purchase money transactions, *e.g.*, the Lilna Yousif and Lara Yousif June 1, 2007 loan serviced by Defendant CitiMortgage, rescission is not an available remedy under TILA. *See* 15 U.S.C. § 1635(e), 12 C.F.R. § 226.23(f); 15 U.S.C. § 1602(w), 12 C.F.R. § 226.2(24); *Yaldu v. Bank of Amer. Corp.*, 700 F. Supp. 2d 832, 841 (E.D. Mich. 2010)(quoting 15 U.S.C. §§ 1635(e)(1), 1602(w) and concluding that "[t]he right of rescission under section 1635 does not apply to a 'residential mortgage transaction,' which is defined as a 'transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.'")

Because they fail to state a claim upon which relief can be granted, Plaintiffs' TILA claims against Defendants are dismissed with prejudice.

### 2. RESPA: Time-barred/Failure to State a Claim

To the extent Plaintiffs allege that Defendants failed to respond to a Qualified Written Request ("QWR") under RESPA, Plaintiffs fail to state a claim upon which relief can be granted because they allege no facts showing that damages occurred as a result of that

failure.  *See* 12 U.S.C. § 2605(f)(1)(A); *see also, Byrd v. Homecoming Fin. Network*, 407 F. Supp. 2d 937, 945-46 (N.D. Ill. 2005) (observing that § 2605(f) "requires a party to show actual damage from a violation of § 2605(e)(2).").  Because Plaintiffs fail to plead any facts concerning the dates of any alleged QWR or the existence of any damages caused by an alleged failure to respond to a QWR, Plaintiffs fail to state a RESPA claim upon which relief can be granted.  To the extent Plaintiffs are claiming RESPA violations that occurred at the origination of their mortgage loans, these claims are time-barred by RESPA's one-year statute of limitation.  *See* 12 U.S.C. § 2614.  Accordingly, Plaintiffs' RESPA claims against Defendants are dismissed with prejudice.

### 3.  HOLA:  Preemption of Plaintiffs' State-Law Claims

As this Court previously recognized, Congress authorized the Office of Thrift Supervision ("OTS") to promulgate rules governing federal savings associations like Defendants OneWest Bank, FSB and Cenlar, FSB.  *See* Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and its implementing regulations 12 C.F.R. § 560.2, *et seq.; see also State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008).

"HOLA created what is now known as the OTS for the purpose of administering the statute, and it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations."  *State Farm Bank*, 539 F.3d at 341.  Pursuant to this broad mandate, the OTS has promulgated extensive regulations, including two codified at 12 C.F.R. §§ 545.2 and 560.2 that preempt state laws that would regulate the operations of a federal savings association.  Included among those preempted actions are state law claims affecting "terms of credit," "disclosure," "processing," "origination,"

"servicing," "sale or purchase of, or investment or participation in, mortgages."  *See* 12 C.F.R. § 560.2(b).

As discussed above, Plaintiffs' claims in this lawsuit rest in large part upon allegations that disclosures made to them during the loan origination process were inadequate. Section 560.2(b) expressly preempts all state claims that relate to "disclosure," "terms of credit," and "origination." 12 C.F.R. § 560.2(b).  Several of Plaintiffs' claims also rest upon alleged flaws in Defendants' sale, transfer, acquisition, and/or investment in Plaintiffs' mortgages (*see* Am. Compl., Counts I, II, and III).  Section 560.2(b)(10) specifically preempts all claims related to the "sale or purchase of, or investment or participation in mortgages."

The federal courts have repeatedly held that § 560.2(b) preempts state common law claims similar to those asserted by Plaintiffs.  For example, in *Conder v. Home Savings of America*, 680 F. Supp. 2d 1168 (C.D. Cal. 2010), the plaintiff-borrower asserted common law fraud claims, among others, against the mortgage lender and loan servicer based upon the lenders' allegedly fraudulent failure to disclose information concerning the terms of the loan.  *Id.* at 1175-76.  The *Conder* court held that the "alleged failures to disclose fit squarely within Sections 560.2(b)(4) and (9)."  *Id.*   A similar result was reached in *Ayala v. World Savings Bank, FSA,* 616 F. Supp. 2d 1007 (C.D. Cal. 2009).  In *Ayala*, the plaintiffs-borrowers brought common law fraud and other claims against the defendant-lender arising out of the defendant's alleged misrepresentations about the terms of and the plaintiffs' ability to repay a mortgage loan.  The *Ayala* court held that § 560.2(b) preempted the fraud claim because it related to the terms of credit extended to the plaintiffs and to disclosures allegedly made to them.  *Id.* at 1016-18. *See also Salgado v. Downey Sav. &*

*Loan Ass'n, F.A.,* No. CV 09-1771 AHM (MANX), 2009 WL 960777, *3 (C.D. Cal. April 6,

2009) (observing that, although the plaintiff's "claims are purportedly grounded in state

contract and fraud doctrines," "they are clearly directed at enforcing" the defendant lenders'

"alleged responsibility to disclose information about a home loan" and "therefore fall

squarely within the confines of 12 C.F.R. § 560.2(b)"); *Silvas v. E*Trade Mortgage Corp.*,

514 F.3d 1001, 1006 (9th Cir. 2008) (observing that, because the plaintiffs had claimed a

violation of § 17200 of California's unfair competition law that "is a type of state law listed

in paragraph [560.2](b) – in two separate sections – the preemption analysis ends there.").

In light of the above, Plaintiffs' state-law claims asserted against Defendants

OneWest Bank, FSB and Cenlar, FSB are preempted.  To the extent the state-law claims

asserted against these Defendants are not preempted, they are dismissed with prejudice

for the reasons stated below.

### B.  State Law Claims

### 1.  Plaintiffs'  Holder-in-Due   Course/Real-Party-In-Interest/Standing Arguments and Claims for Injunctive and Declaratory Relief and Quiet Title (Counts I, II, and III):  Failure to State a Claim in Light of Recent Sixth Circuit Precedent

Imbedded in Plaintiffs' claims for injunctive and declaratory relief and for quiet title is

a standing argument that was recently rejected by the Sixth Circuit Court of Appeals.  *See*

*Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, No. 10-

1782, 2010 WL 4275305 (6th Cir. Oct. 28, 2010).  Similar to Plaintiffs' arguments here, the

plaintiff in *Livonia Properties* argued that "a Michigan mortgage may only be foreclosed by

advertisement if every interim assignment between the original lender and the foreclosed

party is revealed by the public record." *Id.* at *2. The Sixth Circuit rejected the plaintiff's argument, finding that "[t]his position is not supported by the case law." *Id.* at *3.

In *Livonia Properties*, "[t]he public record show[ed] only an assignment from Lehman Brothers to [a] Trust," but the plaintiff had presented the court with evidence showing that there was actually "a series of interim, short-term transfers rather than a direct transfer" between Lehman Brothers and the Trust. *Id.* at *1. The defendant did not dispute that these interim transfers occurred. The defendant also acknowledged that the recorded Lehman Brothers/Trust assignment (the "First Assignment") "was executed 'in blank' (to be completed later) and was later completed to identify the Trust as Lehman Brothers' assignee." *Id.* It was also undisputed that the Trust subsequently "created the defendant entity, Farmington, for the purpose of foreclosing on the mortgaged properties." *Id.* The trustee of the Trust then "assigned the loan to Farmington." *Id.* This Second Assignment from the Trust to the defendant Farmington was then recorded. "Farmington then began the process of foreclosure by advertisement, a method of non-judicial foreclosure permitted under Michigan law." *Id.* (citing Mich. Comp. Laws Ann. § 600.3204). The plaintiff contested the foreclosure, a temporary restraining order was initially granted in plaintiff's favor, but the district court subsequently denied the plaintiff's motion for a preliminary injunction. On appeal, the Sixth Circuit upheld the district court's decision and determined that the plaintiff was not likely to succeed on the merits of its argument that "a Michigan mortgage may only be foreclosed by advertisement if every interim assignment between the original lender and the foreclosed party is revealed by the public record." *Id.* at *2.

The Sixth Circuit considered the most recent decision by the Michigan Supreme Court

addressing this issue, *Arnold v. DMR Financial Services, Inc.*, 532 N.W.2d 852 (Mich. 1995), and determined that, although the decision addressed an earlier version of Michigan's foreclosure-by-advertisement statute that was more favorable to the plaintiff's position, the *Arnold* court held that "the lack of recordation did not invalidate the foreclosure." *Livonia Properties*, 2010 WL 4275305 at *3. As explained by the Sixth Circuit:

> In [*Arnold*], DMR, the financial institution foreclosing on the mortgage, had granted a security interest in the mortgage to another entity, which did not record its interest. The foreclosed party argued that the foreclosure was not carried out in accordance with the statute because the security assignment was not within the chain of title. The Michigan Supreme Court disagreed, restating its long-held position that the presence of an unrecorded security assignment was irrelevant. *Arnold* actually involved a prior version of the foreclosure-by-advertisement statute that said that *all* assignments must be recorded. Even under that stronger language, which is clearly more favorable to Livonia's position than the current requirement that the foreclosing party have "record chain of title," the Michigan Supreme Court was clear that the lack of recordation did not invalidate the foreclosure.

*Id.* (internal quotation marks and citations omitted).

The Sixth Circuit further observed that the failure to record interim assignments in no way affected the plaintiff's "rights and responsibilities related to the mortgage" and "the only interests impaired by the lack of recordation were those of [the interim assignees] during the brief time those entities held the loan. Had either [of the interim assignees] attempted to foreclose, Livonia would have had a valid record-chain-of-title objection." *Id.* The Sixth Circuit concluded that the defendant Farmington "appears to be in full compliance with [§ 600.3204]" because "[b]oth Farmington and Livonia ha[d] produced documents revealing that the public records show the mortgage passing from Lehman Brothers to the Trust to

20

Farmington, and the plain language of the statute appears to require nothing more." *Id.* at *4.

The *Livonia Properties* court also rejected an argument imbedded in Plaintiffs' claims here, i.e., a defective or flawed assignment corrupts the chain of title and precludes the defendant's standing to foreclose under Michigan's foreclosure by advertisement statute. *Id.* at **4-5. The Sixth Circuit rejected this argument on several grounds. First, the plaintiff failed to provide legal authority "for the proposition that the record chain of title is destroyed by an irregularity affecting the validity of transfer." *Id.* at *4. Second, [e]ven if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed." *Id.* Third, "even if there were a flaw in the assignment, Livonia does not have standing to raise that flaw to challenge Farmington's chain of title." *Id.* "[T]here is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Id.* (internal quotation marks and citation omitted).

The Sixth Circuit also observed that there were two reasons why the plaintiff in *Livonia Holdings* could not show that it was likely to suffer irreparable harm if its request for a preliminary injunction were denied. *Id.* at *6. First, "the alleged harms Livonia would suffer from foreclosure were the direct result of Livonia's default on the loan and . . . that self-inflicted harm is not the type that injunctions are meant to prevent." *Id.* Second, because "Michigan's statutory right of redemption . . . allows a borrower subject to foreclosure to satisfy the debt and reclaim the property for six months after the sale," any harm suffered by Livonia "from the foreclosure was not irreparable." *Id.* The same is true here. As

explained more fully below, the alleged harms Plaintiffs would suffer from foreclosure do not derive from the wrongful conduct alleged in Plaintiffs' amended complaint. More importantly, Michigan's statutory right of redemption allows Plaintiffs who are subject to foreclosure to satisfy their debt and reclaim their property thus any harm they may suffer from foreclosure is not irreparable.

For the above stated reasons, Plaintiffs cannot obtain the injunctive relief they seek. Injunctive relief is an extraordinary remedy that may only be awarded if the plaintiff shows that he is entitled to such relief. *See Winter v. Natural Resources Defense Council, Inc.*, ___ U.S. ___, 129 S. Ct. 365, 376 (2008). In light of the Sixth Circuit's recent decision in *Livonia Holdings,* Plaintiffs cannot show that they are entitled to the extraordinary remedy of injunctive relief.

Plaintiffs' claims for declaratory relief, injunctive relief, and quiet title also fail because Plaintiffs signed and executed loan documents that contained provisions authorizing the lender or servicer, or an assign of either, to invoke the power of sale and foreclosure on each Plaintiff's mortgaged property in the event of default. (*See* each Plaintiff's mortgage note and mortgage attached as exhibits to the various Defendants' motions.)[11] Michigan

---

[11]A document not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim[.]" *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotes and citation omitted). "[I]f the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). Accordingly, the loan applications, mortgages, and notes attached to Defendants' motions are considered part of the pleadings, and the Court's consideration of these documents does not convert a motion to dismiss into one for summary judgment.

law does not allow Plaintiffs to disavow knowledge of the documents they have signed. *See Watts v. Polaczyk*, 619 N.W.2d 714, 717 (Mich. Ct. App. 2000) (observing that "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents.").

As discussed above, Plaintiffs' holder-in-due-course, standing, and invalidity arguments were rejected in *Livonia Properties*. Because Plaintiffs' claims seeking declaratory relief rely on those rejected arguments, they are dismissed with prejudice for failure to state a claim. The plain language of Michigan's foreclosure by advertisement statute also precludes Plaintiffs' claims based on the allegation that loan servicers lack authority to foreclose on their residential property. Michigan's statute provides, in pertinent part, that:

> a party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a)  A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b)  An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage . . .
>
> (c)  The mortgage containing the power of sale has been properly recorded.
>
> (d)  The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage <u>or the servicing agent of the mortgage</u>.

Mich. Comp. Laws Ann. § 600.3204(a) (emphasis added).

Plaintiffs' quiet title claims also fail. Under Michigan law, the plaintiff has the burden of proof in an action to quiet title and must make out a prima facie case of title. *Stinebaugh v. Bristol*, 347 N.W.2d 219, 221 (Mich. Ct. App. 1984). Plaintiffs' counsel in this action, Ziyad Kased, filed a similar quiet title claim in *Mekani v. Homecomings Financial, LLC*, ___ F. Supp. 2d ___, 2010 WL 2681077 (E.D. Mich. July 6, 2010). That quiet title claim was dismissed with prejudice because the plaintiff failed to "'provide [any] legal or factual justification for [his] quiet title claim other than the conclusory allegation that the foreclosure was wrongful, invalid, and voidable'. . ." *Mekani*, ___ F. Supp. 2d at ___, 2010 WL 2681077 at *9 (quoting *Urbina v. Homeview Lending, Inc.*, 681 F. Supp. 2d 1254, 1262 (D. Nev. 2009)). Plaintiffs' quiet title claims in this action fail for the same reason.

This Court also rejects the argument raised by Plaintiffs in their Responses, i.e., that they can maintain an action to quiet title because Defendants may not foreclose on mortgaged property held by joint tenants with a right of survivorship. (*See, e.g.,* Pls.' GMAC Resp. at 9.) The two decisions Plaintiffs cite do not support their argument. Neither case addresses the foreclosure of jointly held property. Rather, in *Albro v. Allen*, 454 N.W.2d 85, 86 (Mich. 1990), the Michigan Supreme Court addressed "whether a person who holds title to real property with another as 'joint tenants with full rights of survivorship' may convey a life estate interest without the consent of a cotenant." And, in *Wengel v. Wengel*, 714 N.W.2d 371, 374 (Mich. Ct. App. 2006), the Michigan Court of Appeals addressed whether "the doctrine of adverse possession is available to the occupying tenant to defeat the ousted cotenant's life estate interest held in the property." Plaintiffs fail to show how these decisions advance their quiet title claims against Defendant

Lenders/Servicers. Because Plaintiffs fail to state a claim upon which relief can be granted, their quiet title claims are dismissed with prejudice.

For the above-stated reasons, Plaintiffs' claims for injunctive and declaratory relief and for quiet title are dismissed with prejudice.

**2. Plaintiffs' Breach of Contract (Count VIII, misnumbered Count IX), Negligent, Innocent, and Fraudulent Misrepresentation Claims (Counts V and VI): Michigan's Statute of Frauds, Pleading Deficiencies, and Failure to State a Claim**

**a. Breach of Contract Claim**

Plaintiffs' breach of contract claim alleges generally that Defendants breached their original loan contracts with Plaintiffs by making unauthorized assignments and by assessing unauthorized charges, costs, fees, and penalties. These breach of contract claims fail under *Iqbal*; and, to the extent Plaintiffs' claims are based on unwritten promises regarding the terms of their mortgage loans, they are precluded by Michigan's statute of frauds.

The Court first addresses Plaintiffs' failure to state a breach of contract claim. Plaintiffs do not specify what contracts were allegedly breached. Plaintiffs provide no specific contract provision or identifiable term breached by any specific Defendant. Plaintiffs plead no facts showing how any items or charges paid or to be paid differ in any way from the terms of their respective mortgage loans. Likewise, Plaintiffs identify no contractual provision precluding assignment or incorporating "SEC guidelines" that might preclude assignment. Similar to the plaintiff in *Battah*, Plaintiffs here (represented by the same counsel as in *Battah*) "lazily refer[] to the HUD statement and audit report, neither of

which provides facts as to any breach." *Battah v. ResMAE Mortgage Corp.*, ___ F. Supp. 2d ___, 2010 WL 4260530, *5 (E.D. Mich. Oct. 28, 2010). This is not enough to defeat Defendants' dispositive motions. Because Plaintiffs' breach of contract count consists of nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," it fails to state a claim and is thus dismissed. *Iqbal*, 129 S. Ct. at 1949.

Moreover, the fees and terms Plaintiffs now challenge are described in the documents they executed at their closings, including their respective notes and mortgages. In light of Plaintiffs' execution of these documents, Plaintiffs cannot claim that the terms of their mortgage loans are somehow different from those they accepted at their respective closings. *See Watts*, 619 N.W.2d at 717.

If Plaintiffs are attempting to allege the breach of some unwritten agreement or term not in the mortgage or mortgage loan, any such claim is barred by Michigan's statute of frauds which expressly states that "an action shall not be brought against a financial institution to enforce [a promise of commitment to waive a provision of a loan] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution." Mich. Comp. Laws Ann. § 556.132(2).[12] The Michigan Court of

---

[12]Michigan's statute of frauds provides, in pertinent part, that:

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution

(a) A promise or commitment to <u>lend money</u>, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, <u>modify,</u> or <u>permit a delay in</u>

Appeals has found this language to be unambiguous and has interpreted it as "plainly stat[ing] that a party is precluded from bringing a claim -- no matter its label -- against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech. Park v. D&N Bank, FSB*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). The plain language of Michigan's statute of frauds also precludes Plaintiffs from bringing claims alleging the breach of an unwritten promise to modify or delay repayment of their mortgage loans. *See* § 556.132(2)(b).

### b. Negligent and Innocent Misrepresentation Claims

Michigan's statute of frauds similarly precludes Plaintiffs from bringing negligent or innocent misrepresentation claims against Defendants because these claims seek to enforce oral promises. *See Manire v. Am. Equity Mortgage, Inc.*, No. 04-60278, 2005 WL 2173679, *2 (E.D. Mich. Sept. 6, 2005) (holding that "the Michigan Statute of Frauds prevents Plaintiff from asserting claims of intentional and negligent misrepresentation.").

---

repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to <u>waive a provision of a loan</u>, extension of credit, or other financial accommodation.

(3) As used in subsection (2), "financial institution" means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof.

Mich. Comp. Laws Ann. § 566.132(2), (3) (emphasis added).

As the Michigan Court of Appeals broadly observed in *Crown Tech.*, a claim against a financial institution seeking to enforce the terms of an oral promise is precluded "no matter its label." 619 N.W.2d at 72. Plaintiffs' negligent and innocent misrepresentation claims also fail to meet the pleading requirements of *Iqbal* or Rule 9(b). To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' allegations fail to meet these requirements. For these reasons, and those discussed below, Plaintiffs' claims of negligent and innocent misrepresentation are dismissed with prejudice.

### c. Fraudulent Misrepresentation Claims

Plaintiffs' claims of fraudulent misrepresentation also fail. First, as discussed above, Michigan's statute of frauds precludes misrepresentation claims against financial institutions based upon alleged oral promises. *See* § 566.132(2); *see also Manire*, 2005 WL 2173679 at *2.

Second, Plaintiffs' fraudulent misrepresentation claims are dismissed with prejudice because Plaintiffs failed to properly allege any cognizable fraud. Under Michigan law, the elements of a claim for fraudulent misrepresentation include:

> (1) That defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976) (quoting *Chandler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919)). "[T]he absence of any one of [these elements] is fatal to a recovery." *Id.* It is also well-settled in Michigan law that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual in nature and do not constitute fraud." *Id.*

To meet the particularity requirements of Federal Rule of Civil Procedure 9(b), Plaintiffs must "(1) specify the statements that [Plaintiffs] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted). At a minimum, Plaintiffs "must allege the time, place and contents of the misrepresentations upon which they relied." *Id.* Plaintiffs "also must allege facts from which it could be concluded that [their] reliance was reasonable." *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, *5 (E.D. Mich. Feb. 10, 2010) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553-54 (Mich. Ct. App. 1999)). Plaintiffs' amended complaint does not satisfy the particularity requirements of Rule 9(b). As in other cases filed by Plaintiffs' counsel Ziyad Kased, Plaintiffs here assert fraud claims that accuse Defendants of "inflat[ing] various figures on the original loan application including but not limited to inflated income, understated expenses, understated liabilities, understated debt to income ratio and other non-disclosed items as required by law." (Am. Compl. at ¶ 45.) *See Battah,* ___ F. Supp. 2d at ___, 2010 WL 4260530 at *4; *Mekani*, ___ F. Supp. 2d at ___, 2010 WL 2681077 at *6. As in other

cases filed by Plaintiffs' counsel Ziyad Kased, Plaintiffs' counsel submits a response brief here that "makes reference to an audit report without any specific explanation of how the content of the report supports [Plaintiffs'] fraud claim." *Battah*, ___ F. Supp. 2d at ___, 2010 WL 4260530 at *4. Similar to the decisions in *Battah* and *Mekani*, this Court concludes that Plaintiffs' pleading deficiencies require dismissal of their fraudulent misrepresentation claims. *See id.*

This Court further concludes that Plaintiffs amended complaint fails to state a claim of fraudulent misrepresentation. If, as Plaintiffs claim, they provided accurate financial information that Defendants then inflated, then Plaintiffs knew or had reason to know that their income and expense information was false at the time of closing, if not earlier.[13] Still, Plaintiffs signed the closing documents, including their mortgage notes, and accepted the loaned money. Plaintiffs cannot now argue that they were defrauded. *See Webb v. First of Mich. Corp.*, 491 N.W.2d 851, 854 (Mich. Ct. App. 1992) (holding that "plaintiffs cannot claim to have been defrauded when they had information available to them that they chose to ignore."). This Court agrees with the many other decisions from the Eastern District of Michigan that "have held that it is absurd for a person to sue for fraud based upon the claim that he reasonably relied on inflated statements regarding his own income on a loan application." *Battah*, ___ F. Supp. 2d at ___, 2010 WL 4260530 at *4 (citing *Issa*, 2010 WL

---

[13]Moreover, as discussed above, Michigan law does not allow Plaintiffs to disavow knowledge of the documents they signed. *See Watts*, 619 N.W.2d at 717. As part of the loan origination process, Plaintiffs signed Uniform Residential Loan Applications and represented that the information contained therein was true. (*See, e.g.,* Def. Ocwen Loan Mot., Ex. 3, Uniform Residential Loan Application.) These signed Loan Applications include information concerning income and expenses.

538298 at *5; and *Saleh v. Home Loan Serv., Inc.*, 09-10033, 2009 WL 2496682, *2 (E.D. Mich. Aug. 17, 2009)).

Neither Michigan's discovery rule nor the continuing wrong doctrine save the Plaintiffs' claims from dismissal. *See Mekani*, ___ F. Supp. 2d at ___, 2010 WL 2681077 at **3-4, *10, n.4. In the fraud counts of their amended complaint, Plaintiffs allege that during the origination and closing of their mortgage loans, Defendants deliberately, negligently, or innocently inflated income figures, underestimated each Plaintiff's expenses and liabilities, understated the debt-to-income ratio; failed to inform Plaintiffs of assessed charges, interest rates, fees, and costs associated with their mortgage loans; and sent them statements based on the alleged false representations that occurred, at the latest, on the date of their closings. (Am. Compl. ¶¶ 44-55, 57-67.) Under Michigan law, claims "accrue at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws Ann. § 600.5827. Plaintiffs' fraud claims accrued at the time of their mortgage closings, at the latest. As explained in *Mekani*, the Michigan Supreme Court has held that claims of fraud or intentional misrepresentation cannot be saved by application of the discovery rule. *Mekani*, ___ F. Supp. 2d at ___, 2010 WL 2681077 at **3-4 (citing *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 559-60 (Mich. 2003)). *See also, Lorimer v. Berrelez*, 331 F. Supp. 2d 585, 593 (E.D. Mich. 2004) (observing that "the limitation period begins to run when the misrepresentation was perpetrated and not when the plaintiff discovered or should have discovered the misrepresentation."). Again, as explained in *Mekani*, the doctrine of continuing wrongs does not save Plaintiffs' fraud claims from dismissal. That doctrine "applies only to claims

of 'continual tortious acts, not [ ] continual harmful effects from an original, completed act.' The billing statements and 'correspondence' which were sent in furtherance of the terms of the original loan are not continual tortious acts, but, if anything, continuing harmful effects of the original completed closing of the loan." *Mekani*, ___ F. Supp. 2d at ___, 2010 WL 2681077 at *10 n.4 (quoting *Terlecki v. Stewart*, 754 N.W.2d 899, 908 (Mich. Ct. App. 2008)).

Finally, Plaintiffs' fraud claims asserted against a Defendant Servicer that played no role in the origination or closing of a challenged mortgage loan are also dismissed with prejudice. Plaintiffs' attempt to overcome the fact that Defendant Servicers could not have made any of the alleged negligent, innocent, or fraudulent misrepresentations by arguing, absent supporting authority, that when the agent carries out the fraudulent acts of the principal, then the actions of the principal are imputed to the agent. (*See, e.g.,* Pls.' GMAC Resp. at 15.) As the court observed in *Issa*, it is the plaintiff's burden to allege facts "which, if subsequently found in his favor by the trier of fact, would establish the existence of an agency relationship." *Issa*, 2010 WL 538298 at *4. Similar to the plaintiff in *Issa*, Plaintiffs' amended complaint here "utterly lacks any such allegations," and Plaintiffs' subsequent submissions do not "even hint at a factual predicate upon which a trier of fact could conclude" that Defendant Servicers "acted as the agent for [Defendants] in the initial loan transaction." *Id.* The same reasoning and result in *Issa* apply here -- Plaintiffs' claims of negligent, innocent, and fraudulent misrepresentation "cannot proceed under an agency theory." *Id.* (citing *Jaafar v. Homefield Fin., Inc.*, No. 09-12832, 2009 WL 3602091, *2 (E.D. Mich. Oct. 27, 2009)).

For the above stated reasons, Plaintiffs' breach of contract and negligent, innocent, and fraudulent misrepresentation claims are dismissed with prejudice.

### 3.   Prima Facie Tort:  Failure to State a Claim and Statute of Limitations

Plaintiffs' tort claims are dismissed for the following reasons.  First, Michigan does not recognize a cause of action for prima facie tort.  *See Kwik-Sew Pattern Co. v. Gendron*, No. 1:08-cv-309, 2009 WL 290515, *1 (W.D. Mich. Feb. 5, 2009).

Second, Plaintiffs fail to state a claim of negligence.  Reading Plaintiffs' amended complaint in the light most favorable to them, they allege that Defendant Lenders negligently placed them in unaffordable mortgages.  A similar negligence claim was rejected in *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 912 (Mich. Ct. App. 1991).  There, the plaintiffs claimed that the defendant bank "had negligently loaned them money, that [defendant bank] should have known that plaintiffs could not make payments on the loan, and that this negligence caused harm to plaintiffs when they defaulted."  *Id.*

As the *Ulrich* court observed, because they had received the money they contracted for, the plaintiffs' "novel claim may be accurately characterized as a claim that [defendant bank] had negligently entered into a contract with plaintiffs."  *Id.*  "[I]n a contractual setting, an action in tort must rely on a breach of a duty distinct from those imposed by contract." *Bero Motors v. Gen. Motors Corp.*, No. 224190, 2001 WL 1167533, *4 (Mich Ct. App. Oct. 2, 2001).  "[T]he existence of a duty owed by a defendant to a plaintiff . . . is a question of law for the court to decide."  *Id.*

To determine whether the plaintiffs were asserting a breach of contract or tort claim, the *Ulrich* court applied "the following rule:  if a relation exists that would give rise to a legal

duty without enforcing the contract promise itself, the tort action will lie, otherwise it will not." *Ulrich*, 480 N.W.2d at 912 (citing *Hart v. Ludwig*, 347 Mich. 559, 565, 79 N.W.2d 895 (1956) and other Michigan decisions). It reasoned that, because the plaintiffs had received their loan money and thus had no contract right to enforce, "the question is whether [defendant bank] had a legal duty to exercise reasonable care in determining plaintiffs' eligibility for a loan." *Id.* The court declined to find any such legal duty. "We now decline to create what is essentially a backdoor defense to the enforcement of plaintiffs' obligations by allowing plaintiffs to later claim that [defendant bank] acted negligently in allowing them to enter the contract in the first place." *Id.* at 913. The *Ulrich* court held that the defendant bank "had no independent legal duty to exercise reasonable care in determining plaintiffs' eligibility for a loan." *Id.* The same reasoning and result apply here.

Third, Plaintiffs' attempt to assert a tort action for Defendants alleged breach of a loan contract's implied covenant of good faith and fair dealing also fails. Michigan law "does not recognize an independent tort action" for any such breach. *Ulrich*, 480 N.W.2d at 911.

Fourth, to the extent Plaintiffs' allege a tort claim based on Defendants' breach of a fiduciary duty owed to them, the Michigan courts have not recognized such a duty in the bank/lender relationship. *See Bero Motors*, 2001 WL 1167533 at *4 (citing *Farm Credit Services of Michigan's Heartland, PCA v. Weldon*, 232 Mich. App. 662, 680; 591 N.W.2d 438 (1998) for the proposition that a "fiduciary relationship does not generally arise in the bank lender relationship."). As explained in *Bero Motors*,

> A fiduciary duty arises where there is a fiduciary relationship between the parties. Familiar examples are: trustees to beneficiaries, guardians to wards, attorney to client, and doctors to patients. Generally, whether a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within

> the scope of the relation. Generally, this Court has been reluctant to extend the cause of action for breach of fiduciary relationship beyond the traditional context.

*Bero Motors*, 2001 WL 1167533 at *4 (internal citations omitted). Similar to the Michigan Court of Appeals' holding in *Ulrich*, 480 N.W.2d at 911, this Court concludes that Plaintiffs have failed to state a claim for any breach of a fiduciary duty. "Plaintiffs' allegations of inexperience and reliance on [defendant bank] are insufficient to claim a fiduciary relationship." *Id.* Moreover, Plaintiffs fail to identify any statute or regulation or other legal ground for imposing a fiduciary duty on Defendants.

Finally, even if Plaintiffs had stated a tort claim, it would be barred by Michigan's three-year statute of limitations for torts. *See* Mich. Comp. Laws Ann. § 600.5805(10). For the vast majority of Plaintiffs, the events giving rise to their tort claims arise from events that occurred at the closing on their mortgage loans at the latest, and each of these events occurred more than three years before the April 26, 2010 date this lawsuit was filed.

For all these reasons, Plaintiffs' tort claims are dismissed with prejudice.

### 4. Plaintiffs' Civil Conspiracy Claim (Count IV): Failure to State a Claim

Under Michigan law, a civil conspiracy claim "is not cognizable without a cognizable underlying tort." *Battah*, ___ F. Supp. 2d at ___, 2010 WL 4260530 at *5 (citing *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358-59 (Mich. Ct. App. 1992)). Here, Plaintiffs' underlying tort claims fail and thus their civil conspiracy claim also fails. *Id.* Plaintiffs' broad arguments in their Responses that they can state a civil conspiracy claim against these Defendants because of alleged "wrongful act[s] of the mortgage industry as a whole" are insufficient to defeat Defendants' motions. As stated in the introductory

paragraph, Plaintiffs' amended complaint does not allege claims based on the foreclosure process problems that are the subject of ongoing investigations by the Attorneys Generals of all fifty states and the federal government and the topic of numerous recent news articles, congressional hearings, and litigation, i.e., the use of robo-signers and flawed and/or fraudulent documents prepared in connection with pending foreclosures. Likewise, Plaintiffs' amended complaint does not allege claims similar to those alleged in recent litigation brought by investors challenging their investments in mortgage-backed securities. Conspiracy claims require specificity, and Plaintiffs' Responses fail to show how they can state a civil conspiracy claim against these Defendants.[14] As observed in *Suburban Buick, Inc. v. Gargo*, No. 08 C 0370, 2009 WL 1543709 (N.D. Ill. May 29, 2009), when a case involves multiple defendants, "[t]he complaint should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Id.* at *4 (internal quotation marks and citation omitted).

_____

[14]Although Plaintiffs avoid the label, much of the allegations in their amended complaint and arguments in their various Responses to Defendants' motions appear to object to Defendants' alleged pattern and practice of "predatory lending" by inducing unsophisticated borrowers into unconscionable and unaffordable mortgages. (*See, e.g.,* Pls.' Ocwen Loan Resp. at 11 arguing "[e]ach Plaintiff's loan is predatory. . . .) As this Court has previously observed, Michigan law does not recognize a claim for predatory lending. *Printy v. GMAC Mortgage*, 2010 WL 931861 at *5.

Moreover, to the extent Plaintiffs are arguing that an undefined conspiracy exists surrounding Defendants' membership in non-party MERS and that the assignment of mortgages to MERS is somehow actionable in a claim for civil conspiracy, Plaintiffs fail to allege any facts explaining how such a membership or assignment violates Michigan law. Further, any contention that assignments were prohibited by Plaintiffs' mortgages fails because there is no such prohibition in their mortgage contracts.

Because Plaintiffs cannot state a claim for relief on their civil conspiracy claims, these claims are dismissed with prejudice.

## IV.  Conclusion

For the above-stated reasons, Defendants' motions to dismiss, for judgment on the pleadings, or for summary judgment are GRANTED, and all the claims asserted in Plaintiffs' amended complaint are DISMISSED WITH PREJUDICE.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 15, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 15, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager